IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 14 C 5579 |
| v. | ) ) | |
| AUTOZONE, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On September 23, 2014, Plaintiff United States Equal Employment Opportunity Commission ("EEOC") filed an Amended Complaint on behalf of Kevin Stuckey, a former employee of Defendant AutoZone, Inc., for violating Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, based on Stuckey's race. Before the Court is AutoZone's amended motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants AutoZone's motion and dismisses this lawsuit in its entirety.

### BACKGROUND

In January 2008, AutoZone hired Stuckey, who is African-American, as a part-time salesperson at store 2574, which is located near the intersection of Ogden & Pulaski in Chicago, Illinois, and paid Stuckey $8.24/hour. (R. 54, Def.'s Am. Rule 56.1 Stmt. Facts ¶¶ 3, 4.) Approximately eight months after he started working at the Ogden & Pulaski location, AutoZone transferred Stuckey to store 4416, also known as the "Kedzie" store, which is also located in

Chicago. (*Id*. ¶ 5; R. 57, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶ 1.) It is undisputed that Stuckey's transfer was for the same position and that he performed the same responsibilities at the same rate of pay. (Def.'s Stmt. Facts ¶ 7.) Also, it is undisputed that about a month after he transferred to the Kedzie store, Stuckey received a pay increase. (*Id*. ¶ 8.) In October 2009, Stuckey received another pay increase while he worked at the Kedzie store and in May 2010, AutoZone promoted him to a management position, namely, part-time sales manager ("PSM"), with a pay increase to $11/hour. (*Id*. ¶¶ 10, 11.) A few weeks after his promotion in 2010, AutoZone transferred Stuckey to another Chicago store, specifically store 2655, and a few weeks after that, AutoZone transferred him to another Chicago store where he worked until May 2011. (*Id*. ¶¶ 18, 22, 27.) In May 2011, AutoZone transferred Stuckey back to the Kedzie store. (*Id*. ¶ 28.) It is undisputed that Stuckey's job responsibilities and pay remained the same when he transferred back to the Kedzie store in May 2011. (*Id.* ¶ 30.) Also, Stuckey remained in the PSM position from May 2010 until he left AutoZone in July 2012. (*Id*. ¶ 12.)

After Stuckey returned to the Kedzie store in 2011, Vernon Harrington became ths store manager. (*Id*. ¶ 32.) In July 2012, AutoZone's district manager Robert Harris decided to transfer Stuckey from the Kedzie store to store 2290 located on East 103rd Street in Chicago. (*Id*. ¶¶ 24, 42-44; Pl.'s Stmt. Facts ¶¶ 12, 19.) It is undisputed that Stuckey was being transferred as a PSM with no loss of pay, change in benefits, or change in job duties. (Def.'s Stmt. Facts ¶ 48.) Stuckey never reported to store 2290 after Harrington told him he was being transferred. (*Id*. ¶¶ 43, 50.) Instead, on August 13, 2012, Stuckey filed an EEOC charge claiming he was "going to be transferred to a different location" due to his race. (*Id*. ¶ 52.) Stuckey believed that his transfer from the Kedzie store in July 2012 was based on race because

2

Harris wanted to make the Kedzie store "predominantly Hispanic." (*Id.* ¶ 58.) Also, it is undisputed Stuckey testified that Harris transferred him out of the Kedzie store because of sales numbers. (*Id*. ¶ 64.) In any event, Stuckey admits that he was not fired and that no one at AutoZone forced him to resign in July 2012. (*Id*. ¶ 56.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). A court's "job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## ANALYSIS

In the Amended Complaint, Plaintiff brings a Title VII disparate treatment claim on

behalf of Stuckey. Title VII makes it unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a).

In general, to bring a disparate treatment claim under Title VII, a plaintiff must establish that he suffered an adverse employment action. *See Chaib v. Indiana,* 744 F.3d 974, 982 (7th Cir. 2014) ("The requirement that a plaintiff show she suffered an adverse employment action as a result of her employer's alleged discrimination is an element of any Title VII claim"). "Adverse employment actions 'generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge.'" *Alexander v. Casino Queen, Inc.,* 739 F.3d 972, 980 (7th Cir. 2014) (citation omitted). The "idea behind requiring proof of an adverse employment action is simply that a statute which forbids employment discrimination is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace." *Hunt v. City of Markham, Ill.,* 219 F.3d 649, 653 (7th Cir. 2000); *see also Phelan v. Cook Cnty.,* 463 F.3d 773, 780 (7th Cir. 2006) ("purpose of the adverse employment action requirement is to provide a reasonable limiting principle for the type of conduct actionable under the statute").

4

In response to AutoZone's summary judgment motion, Plaintiff maintains that this lawsuit is not being brought under 42 U.S.C. § 2000e–2(a)(1), but instead under § 2000e–2(a)(2), contending that AutoZone's conduct was unlawful because it transferred Stuckey as part of a plan to "limit, segregate, or classify his employees" on the basis of race. Plaintiff thus argues that the Court need not determine whether Stuckey's July 2012 transfer from the Kedzie store was an adverse employment action under the terms, conditions, and privileges language in § 2000e–2(a)(1). *See, e.g., Ripberger v. Corizon, Inc.,* 773 F.3d 871, 877 (7th Cir. 2014). Rather, Plaintiff contends that "Stuckey's transfer need not separately constitute an adverse action in order to be actionable under this part of Title VII." (R. 56, Pl.'s Resp. Brief, at 8.) Although the Seventh Circuit has stated that § 2000e–2(a)(2) "create[s] a broad substantive right that extends far beyond the simple refusal or failure to hire," *Kyles v. J.K. Guardian Sec. Serv., Inc.,* 222 F.3d 289, 298 (7th Cir. 2000), Plaintiff fails to point to any legal authority that he is not required to present evidence of an adverse employment action under his theory of liability.

Indeed, in Seventh Circuit cases involving § 2000e-2(a)(2)'s prohibition of limiting, segregating, or classifying employees, the court requires a plaintiff to establish that he suffered an adverse employment action. *See Henry v. Milwaukee Ctny.,* 539 F.3d 573, 585-86 (7th Cir. 2008); *Nanda v. Board of Trs. of Univ. of Ill.*, 303 F.3d 817, 829-30 (7th Cir. 2002); *see also Williams v. Lovchik,* 830 F.Supp.2d 604, 617 (S.D. Ind. 2011) ("§ 2000e–2(a)(2) still requires an adverse employment action."); *cf. Sweeney v. West,* 149 F.3d 550, 556 (7th Cir. 1998) (when considering whether employment decision amounts to an adverse employment action, "[c]ommon sense and the examples used in the statute's principal section, 42 U.S.C. §

5

2000e–2(a), exclude instances of different treatment that have little or no effect on an employee's job."). In *Henry*, for example, after the Seventh Circuit rejected the defendant's argument that there was a bona fide occupational requirement to exclude female correctional guards from working the third shift at a juvenile detention facility, the Seventh Circuit explained that "the dramatic reduction in the opportunity for women to work on the third shift constituted an adverse employment action" based on the third shift's higher pay and significant overtime opportunities. *See id.* at 585-86. Likewise, other Circuit Courts require a showing of an adverse employment action under § 2000e-2(a)(2). *See James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir. 2004); *Forkkio v. Powell,* 306 F.3d 1127, 1130 (D.C. Cir. 2002). Moreover, the plain language of § 2000e–2(a)(2) clearly states that any classification or limitation cannot "deprive or tend to deprive any individual of employment opportunities" or "otherwise adversely affect his status as an employee," thus requiring that the employer's actions affect a plaintiff's employment or alter the conditions of the workplace. *See Burlington No. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 62, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

Nevertheless, Plaintiff relies on the Seventh Circuit's decision in *Kyles* to support his argument that he need not show an adverse employment action to support his § 2000e–2(a)(2) claim. In *Kyles*, the Seventh Circuit concluded that employment discrimination testers who were denied employment had standing to sue for damages under Title VII, although they were not genuinely interested in any employment opportunity. *See id.* at 298-99.[1] In doing so, the Seventh Circuit recognized that Congress has the power to "enact statutes creating legal rights,

---

[1] "In the employment context, a 'tester' is an individual who, without intent to accept an offer of employment, poses as a job applicant in order to gather evidence of discriminatory hiring practices." *Kyles v. J.K. Guardian Sec. Serv., Inc.,* 222 F.3d 289, 291 n.1 (7th Cir. 2000*).*

the invasion of which creates standing, even though no injury would exist without the statute." *Kyles*, 222 F.3d at 294 (citation omitted). The *Kyles* court specifically relied on § 2000e–2(a)(2) in reasoning that Title VII does not have a "requirement that a job applicant must have a bona fide interest in working for a particular employer if she is to make out a prima facie case of employment discrimination," because "the statute proscribes employment practices which 'in any way ... would deprive or tend to deprive any individual of employment opportunities[.]'" *Id.* at 300 (citing § 2000e–2(a)(2)).

Here, Plaintiff points to the following language in *Kyles* as allowing him to bring his disparate treatment claim under § 2000e–2(a)(2) without establishing an adverse action:

> When a job applicant is not considered for a job simply because she is African–American, she has been limited, segregated or classified in a way that would tend to deprive not only her, but any other individual who happens to be a person of color, of employment opportunities. In other words, she suffers an injury "in precisely the form the statute was intended to guard against," just as she would if, as a housing tester, she were falsely informed that a vacant apartment was unavailable. She therefore has standing to sue, even if she has not been harmed apart from the statutory violation—even if, for example, she was not genuinely interested in the job she applied for and in that sense was not harmed by the employer's refusal to hire her.

*Id.* at 298 (internal citation omitted). The *Kyles* court further explained the "fact that [the testers] had no interest in actually working for the company certainly speaks to the nature and extent of their injuries as well as the appropriate relief. But it does not rule out the prospect that they were injured." *Id*. at 300 (internal citation omitted). Keeping in mind that the *Kyles* decision concerns Article III standing, the *Kyles* court's analysis turns on the fact that a litigant can establish Article III standing based on a statutory violation if she suffers an injury in a form that "the statute was intended to guard against" although "she has not been harmed apart from the statutory violation." This is because Title VII creates "legal rights, the invasion of which creates

7

standing, even though no injury would exist without the statute." *Id.* at 294. As such, Plaintiff's argument that Stuckey need not show an adverse action is not supported by *Kyles*. Therefore, Plaintiff's argument that Stuckey's July 2012 transfer need not amount to an adverse action in order for his § 2000e–2(a)(2) claim to be actionable is misplaced.

Turning to whether Plaintiff has presented evidence raising a genuine issue of material fact for trial that Stuckey did suffer an adverse employment action, the Court recognizes that the definition of adverse employment action is generous. *See Chaib,* 744 F.3d at 982. In comparing Title VII's substantive provision § 2000e-2(a) with Title VII's anti-retaliation provision § 2000e-3(a), the Supreme Court teaches that the terms "in the substantive provision—"hire," "discharge," "compensation, terms, conditions, or privileges of employment," "employment opportunities," and "status as an employee"—explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace. No such limiting words appear in the antiretaliation provision." *White,* 548 U.S. at 62. Nonetheless, "[w]hile adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1116 (7th Cir. 2009) (quotation marks omitted).

It is undisputed that when AutoZone transferred Stuckey from the Kedzie store in July 2012, he did not receive a reduction in pay, a change in benefits, or any change in job duties, and it is well-established that "a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Lavalais v. Village of Melrose Park,* 734 F.3d 629, 634 (7th Cir. 2013) (citation omitted); *see also Nichols v. Southern Ill. University-Edwardsville*, 510 F.3d 772, 776 (7th Cir. 2007) ("transfer involving no reduction

in pay and no more than a minor change in working conditions" not adverse action) (citation omitted). Also, "[f]or an employer's action to be defined as 'materially adverse' it must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013) (citation omitted).

Plaintiff, however, does not address these issues. Rather, Plaintiff argues that Stuckey suffered dignitary harm and humiliation because AutoZone maintained a racially segregated workplace, and that such humiliation amounts to an adverse employment action. In support of this argument, Plaintiff cites Fair Housing Act cases, which give little guidance because they do not speak to adverse employment actions, but explain that humiliation and racial indignity can be a basis for compensatory damages under the Fair Housing Act. *See, e.,g., Tyus v. Urban Search Mgmt.,* 102 F.3d 256, 265 (7th Cir. 1996); *Seaton v. Sky Realty Co., Inc.,* 491 F.2d 634, 636 (7th Cir. 1974). Indeed, as the Seventh Circuit teaches, "[w]e have long recognized that humiliation, embarrassment, and like injuries...constitute cognizable and compensable harms stemming from discrimination." *Kyles*, 222 F.3d at 300. Meanwhile, Plaintiff's reliance on Article III standing cases fares no better, as discussed in detail above.

In any event, under Title VII, a materially adverse action may include the situation where a plaintiff's work conditions subject him to an objectively humiliating or degrading workplace. *See Arizanovska v. Wal-Mart Stores, Inc.,* 682 F.3d 698, 704 (7th Cir. 2012); *Herrnreiter v. Chicago Housing Auth.,* 315 F.3d 742, 745 (7th Cir. 2002); *see also Flaherty v. Gas Research Inst.,* 31 F.3d 451, 457 (7th Cir. 1994) ("a plaintiff's perception that a lateral transfer would be personally humiliating is insufficient, absent other evidence, to establish a materially adverse

9

employment action.").[2] Construing the facts and all reasonable inferences in Stuckey's favor, there is no evidence in the record that Stuckey's July 2012 transfer from the Kedzie store to store 2290 located on 103rd Street in Chicago resulted in an objectively humiliating or degrading change in work conditions. *See Tart v. Illinois Power Co.,* 366 F.3d 461, 475 (7th Cir. 2004). Instead, there is evidence in the record that Stuckey objected to the transfer to store 2290 because of the distance from his home and the resultant inconvenience of a longer commute. (R. 57, Pl.'s Resp. to Def.'s Rule 56.1 Stmt. ¶ 45; R. 57-10, Ex. J., Pl.'s Dep., at 89-90, 121.) This disruption, without more, does not amount to an adverse employment action under Title VII. *See Nichols,* 510 F.3d at 781 (subjective preference not materially adverse action); *Griffin v. Potter,* 356 F.3d 824, 829 (7th Cir. 2004) (increased commute not adverse action). Moreover, even if a longer commute did constitute an adverse employment action under the circumstances, any such commute had no effect on Stuckey because he never worked at store 2290 in the first instance. *Cf. Nagle,* 554 F.3d at 1121 (plaintiff "did not suffer any hardship connected with the suspension because he never actually served it"); *Whittaker v. Northern Ill. Univ.,* 424 F.3d 640, 647 (7th Cir. 2005) ("suspension without pay that is never served does not constitute an adverse employment action"). Accordingly, Plaintiff has failed to present sufficient evidence creating a triable issue of fact that Stuckey suffered any material adversity in relation to his July 2012 transfer. The Court therefore grants AutoZone's summary judgment motion and dismisses this lawsuit in its entirety.

---

[2] Plaintiff does not argue that Stuckey was constructively discharged or that he suffered from a hostile work environment. *See Alexander v. Casino Queen, Inc.,* 739 F.3d 972, 980 (7th Cir. 2014).

## CONCLUSION

For these reasons, the Court grants Defendant's motion for summary judgment and dismisses this lawsuit in its entirety.

**Dated:** August 4, 2015

                                      **ENTERED**

                                      _____
                                      **AMY J. ST. EVE**
                                      **United States District Court Judge**