In the

# United States Court of Appeals

### For the Seventh Circuit

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

---

No. 15-3201

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

            *Plaintiff-Appellant*,

       *v.*

AUTOZONE, INC., and
AUTOZONERS, LLC,

            *Defendants-Appellees*.

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 5579 — **Amy J. St. Eve**, *Judge*.

---

On Petition for Rehearing En Banc.

---

DECIDED NOVEMBER 21, 2017

---

  Before WOOD, *Chief Judge*, and FLAUM, EASTERBROOK, KANNE, ROVNER, SYKES, HAMILTON, and BARRETT, *Circuit Judges*.

Case: 1:14-cv-05579 Document #: 95 Filed: 11/29/17 Page 2 of 7 PageID #:1390
Case: 15-3201     Document: 00713117850     Filed: 11/29/2017     Pages: 7

PER CURIAM. On consideration of the EEOC's petition for rehearing, the panel has voted unanimously to deny rehearing. A judge in active service called for a vote on the request for rehearing en banc. A majority of judges in active service voted to deny rehearing en banc. Chief Judge Wood and Judges Rovner and Hamilton voted to grant rehearing en banc.

It is therefore ordered that the petition for rehearing and for rehearing en banc is DENIED.

No. 15-3201 3

WOOD, *Chief Judge*, and ROVNER and HAMILTON, *Circuit Judges*, dissenting from denial of rehearing *en banc*.

This case presents a straightforward question under Title VII of the Civil Rights Act of 1964: Does a business's policy of segregating employees and intentionally assigning members of different races to different stores "tend to deprive any individual of employment opportunities" on the basis of race? The panel answered this question "not necessarily." I cannot agree with that conclusion. The importance of the question and the seriousness with which we must approach all racial classifications convince me that this case is worth the attention of the full court.

**I**

Title VII makes it unlawful for any employer to "limit, segregate, or classify his employees … in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The Equal Employment Opportunity Commission argues that AutoZone violated this provision when it used race as *the* defining characteristic for sorting employees into separate facilities—in this case, a "Hispanic" store located at South Kedzie Avenue and West 49th Street, and an "African-American" store in Chicago's Roseland neighborhood. The Commission, whose factual allegations we must credit at this stage, claims that AutoZone went so far as to transfer one African-American employee, Kevin Stuckey, from the Kedzie store to the Roseland store in order to ensure the racial homogeneity of both locations.

Under the panel's reasoning, this separate-but-equal arrangement is permissible under Title VII so long as the "separate" facilities really are "equal." In other words, if a Title VII plaintiff cannot prove that her employer's intentional maintenance of racially segregated facilities diminished her "pay, benefits, or job responsibilities," then her employer has not violated section 2000e-2(a). See *EEOC v. AutoZone, Inc.*, 860 F.3d 564, 565, 566, 567, 568 (7th Cir. 2017). That conclusion, in my view, is contrary to the position that the Supreme Court has taken in analogous equal protection cases as far back as *Brown v. Board of Education*, 347 U.S. 483 (1954), and it is contrary to the position that this court took in *Kyles v. J.K. Guardian Security Services, Inc.*, 222 F.3d 289 (7th Cir. 2000).

We can start with *Brown* to find support for the proposition that separate is inherently unequal, because deliberate racial segregation by its very nature has an adverse effect on the people subjected to it. The Court in *Brown* observed that "the Negro and white schools involved have been equalized, or are being equalized, with respect to buildings, curricula, qualifications and salaries of teachers, and other 'tangible' factors." *Brown*, 347 U.S. at 492. Nevertheless, the Court held that "[s]eparate educational facilities are inherently unequal" because separation itself has a detrimental effect on minority children. *Id.* at 495. The Supreme Court has adhered scrupulously to that holding. For example, in *Parents Involved in Community Schools v. Seattle School District No. 1*, 551 U.S. 701 (2007), in a part of the opinion for which he wrote for the Court, Chief Justice Roberts reiterated that even well-motivated racial classifications are inherently suspect, and that it is never permissible to classify individuals in a way that makes their race "determinative standing alone." *Id.* at 723;

see also *id*. at 748 ("The way to stop discrimination on the basis of race is to stop discriminating on the basis of race.").

Of course, private parties such as AutoZone are not subject to the Fourteenth Amendment, but through legislation that rests in part on section 5 of the Fourteenth Amendment—namely, the Civil Rights Act of 1964, of which Title VII is a key provision—the same principles carry over. Our decision in *Kyles* makes that clear. As we explained in *Kyles*, section 2000e-2(a)(2) *broadens* the protection offered by other parts of the Civil Rights Act, by proscribing "employment practices which in any way … would deprive or tend to deprive *any* individual of employment opportunities." *Kyles*, 222 F.3d at 298 (internal quotation marks omitted). If this had been a private suit brought by Stuckey, it might have been appropriate for the panel to disregard the effect of AutoZone's racial segregation on persons other than the plaintiff. But it was not. This was a suit brought by the EEOC, under its authority to enforce Title VII. The Commission made the point that, in addition to the dignitary harm Stuckey suffered by being the victim of overt racial segregation, AutoZone's practice of designating the Kedzie store as the "Hispanic" store and the Roseland store as the "African-American" store deprived people who did not belong to the designated racial group of employment opportunities at their preferred geographic location. This easily describes an adverse effect, based on impermissible characteristics, on employment opportunities.

## II

The panel was worried that the Commission's position—according to which deliberate racial segregation necessarily harms employees—would leave no work for the language in

Case: 1:14-cv-05579 Document #: 95 Filed: 11/29/17 Page 6 of 7 PageID #:1394
Case: 15-3201     Document: 00713117850     Filed: 11/29/2017     Pages: 7

6                                                            No. 15-3201

section 2000e-2(a)(2) calling for an employment action that "deprive[s] or tend[s] to deprive any individual of employment opportunities or otherwise adversely affect[s] his status as an employee." I see no such risk. As I already have noted, to the extent that the statute requires proof of an adverse effect apart from the inherent harms of racial segregation, the Commission has made that showing. The ability to work at a particular store or in a particular geographic area is itself a "job opportunit[y]" within the plain meaning of the statute. If the EEOC's factual allegations are true, then AutoZone has denied these job opportunities to certain employees based on their race, thereby violating the clear text of section 2000e-2. Nothing in the text of Title VII requires the Commission to prove *additional* deprivations related to "pay, benefits, or job responsibilities," as the panel seems to assume.

Unlike the panel, I do not believe that the Commission's interpretation of section 2000e-2 strips the "adverse effect" requirement from the statute. There are some (though rare) instances of segregation that are neither invidious nor degrading; these types of segregation are permissible under section 2000e-2 because they do not adversely affect employees. For example, a business that segregates restrooms or exercise facilities on the basis of sex does not necessarily deprive its employees of employment opportunities or otherwise harm them. Granted, it is harder to think of a legitimate example involving racial segregation, but that is because, as *Parents Involved* emphasized, it is very difficult to think of *any* legitimate example of racial classifications. The fact that racial segregation carries with it a unique stigma, which makes it inherently harmful, does not provide grounds to think that the statutory language requiring segregation to have an adverse effect is superfluous. The same statute also

No. 15-3201 7

covers color, religion, sex, and national origin; the validity of an action "limit[ing], segregat[ing], or classify[ing]" employees on any of those other bases would require its own analysis.

### III

The facts of this case are (I hope) unusual: we have a plausible allegation, backed up with evidence appropriately presented at the summary judgment stage, that an employer is deliberately maintaining racially segregated workplaces. Such a practice is one that, at a minimum, tends to deprive a person of employment opportunities (*i.e.*, all jobs at the locations for which his race is not a match) and adversely affects his status as an employee by telling him that his job opportunities with this employer are limited by his race. Perhaps the EEOC could have put together more evidence to this effect but, in my view, the statute's broad language—which extends to actions that "*tend* to deprive *any* individual"—does not require a factual showing any more extensive than the one that the Commission already has provided.

Because the panel's opinion, as I read it, endorses the erroneous view that "separate-but-equal" workplaces are consistent with Title VII, I respectfully dissent from denial of rehearing *en banc*.